# No. 16-2306

---

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

---

### MMM HEALTHCARE, INC.; PMC MEDICARE CHOICE, INC.

Plaintiffs - Appellants

v.

### THE COMMONWEALTH OF PUERTO RICO;
### OFFICE OF THE INSURANCE COMMISSIONER OF PUERTO RICO;
### ANGELA WEYNE-ROIG, Insurance Commissioner of Puerto Rico

Defendants - Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEES

---

**LUIS R. ROMÁN-NEGRÓN**
Solicitor General

**LUIS J. LÓPEZ VALDÉS**
Acting Assistant Solicitor General
Department of Justice
PO Box 9020192
San Juan, PR 00902-0192
Tel. (787) 724-2165/Fax (787) 724-3380
E-mail: llopez@justicia.pr.gov

# TABLE OF CONTENTS

Page(s)

I. COUNTERSTATEMENT OF THE ISSUES PRESENTED
    FOR REVIEW ...........................................................................................1

    A. The Court is without jurisdiction to entertain this matter as this case does not arise under federal law.

    B. This matter has been decided by a final state court judgment, owed Full Faith and Credit by this Court, *res judicata* barring review.

    C. The Puerto Rico Prompt Payment of Claims to Health Services Providers Act, 26 L.P.R.A. §§ 3001-3008, is not preempted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 42 U.S.C. § 1395w-26(b)(3).

Equity Favors OIC, and MMM comes to the Court with unclean hands.

II. COUNTERSTATEMENT OF THE CASE .................................................. 2-8

    A. Course of the proceedings and the disposition below. ................. 2-3

    B. Counterstatement of the Facts......................................................... 3-8

III. SUMMARY OF THE ARGUMENT .......................................................... 8-9

IV. STANDARD OF REVIEW...................................................................... 9-10

V. ARGUMENT................................................................................................10

    A. The Court is without jurisdiction to entertain this matter, as Plaintiff's complaint is a preemption defense to an anticipated breach of contract suit which does not arise under federal law .........................10-16

    B. This matter has been decided by a final state court judgment, owed Full Faith and Credit by this Court, *res judicata* barring review ...........16-22

C. The Puerto Rico Prompt Payment of Claims to Health Services Providers Act, 26 L.P.R.A. § 3001 et. seq., is not preempted by 42 U.S.C. § 1395w-26(b)(3) ................................................................. 22-48

1. Preemption doctrine.......................................................... 23-24
2. The plain language of the federal statute............................ 24-30
3. The Prompt-Payment Act does not regulate MA plan "standards", is within the Commonwealth's police powers and is thus not preempted by 1395w-26 ................................................... 31-32
4. 42 C.F.R. § 422.520 has no preemptive effect and in any event is consistent with the Prompt-Payment Act ........................... 32-36
5. Legislative Materials ....................................................... 36-40
6. Case law........................................................................ 40-48

D. Equity favors the OIC and MMM has come to the Court with unclean hands ................................................................. 48-52

VI. CONCLUSION ........................................................................ 52-53

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .............................. 54

CERTIFICATE OF FILING AND SERVICE ................................................. 55

# TABLE OF AUTHORITIES

*Legislation (Federal)*

U.S. Constitution
    Article IV § 1.................................................................16
    Article VI, Clause 2.......................................................23

Cable Communications Policy Act of 1984, 47 U.S.C. § 543 ................................12

42 C.F.R. § 422.2 .................................................................28
42 C.F.R. § 422.50 ......................................................... 22,33,35
42 C.F.R. § 422.50 (a)(1) .................................................. 32,34
42 C.F.R. § 422.520 ........................................................ 47,51
42 C.F.R. § 422.520(b)(1) ............................................... 9,34,43
42 C.F.R. § 422.520(b)(2) ...................................................43
42 C.F.R. § 422.504(g) ......................................................42

24 U.S.C. 1395w-26(b)(3) ..................................................36

28 U.S.C. § 1738 ...............................................................16
28 U.S.C. §§ 2201-2202 .....................................................14

42 U.S.C. § 1305 ...............................................................14
42 U.S.C. § 1395mm ...................................................... 29,30
42 U.S.C. § 1395w-21....................................................... 27,28
42 U.S.C. § 1395w-25(c)(1) ...............................................25
42 U.S.C. § 1395w-26 ..................................................... 25,34
42 U.S.C. § 1395w-26(a) .....................................................25
42 U.S.C. § 1395w-26(a)(1) ................................................35
42 U.S.C. § 1395w-26(a)(1)(A) ...........................................25
42 U.S.C. § 1395w-26(b)(1) .............................................. 25,29
42 U.S.C. § 1395w-26(b)(2) ............................................ 25,29,30
42 U.S.C. § 1395w-26(b)(3) ........................................... *passim*
42 U.S.C. § 1395w-27.........................................................36
42 U.S.C. § 1395w–28(a)(1) ............................................... 26,28
42 U.S.C. § 1395w–28(b)(1) ............................................... 27,36
42 U.S.C. § 1395w-101(b)(1)(B)(vi) .....................................45
42 U.S.C. § 1395w-112(g) ..................................................44
42 U.S.C. § 1395w-405(g) ..................................................44

C.R. on H.R. 1, Medicare Prescription Drug and Modernization Act of 2003,
149 Cong Rec H 11877, 11990, 11992, 12023 ....................................................38

"Medicare Choice Program"
Title 42, Chapter 7, Subchapter XVIII ,
Part C of the U.S.C. titled, or §§ 1395w-21 et seq. ....................................... 26,27

Puerto Rico's Prompt Payment of Claims to Health Services Providers Act,
P.R. Laws Ann. § 3001 et. seq., tit. 26.....................................................................2

## *Legislation (Puerto Rico)*

P.R. Law 72, 24 L.P.R.A. 7033(c) .................................................................... 40,41

P.R. Laws Ann. § 3002, tit. 26...............................................................................31

P.R. Laws Ann. tit. 31, § 3343................................................................................17

Puerto Rico Public Law 104-2002 .........................................................................31

## *Cases (Federal)*

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ........................................................23

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996) .....................................................14

*Baez-Cruz v. Municipality of Comerio*, 140 F.3d 24 (1st Cir. 1998) ............... 18,20

*Berríos v. Gonzalez-Rosario*, 630 F.3d 7 (1st Cir. 2010) .................................. 17,20

*Bird v. Centennial Ins. Co.*, 11 F.3d 228 (1st Cir. 1993)........................................51

*Boone v. Kurtz*, 617 F.2d 435 (5th Cir. 1980) .......................................................22

*Brady v. Credit Recovery Co.*, 160 F.3d 64 (1st Cir. 1998) ........................... *passim*

*Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003)............................30

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ............................................................33

*Cruz v. Melecio*, 204 F.3d 14 (1st Cir. 2000) ................................... 17,21

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658 (1993) ............................... 23,24,28

*Del Grosso v. Surface Transp. Bd.*, 804 F.3d 110 (1st Cir. 2015) ..........................34

*Del Grosso v. Surface Transp. Bd.*, 811 F.3d 83 (1st Cir. 2016) ............ 32,33,35,37

*Disabled in Action v. Hammons*, 202 F.3d 110 (2d Cir. 2000) ..............................37

*Doe v. Pfrommer*, 148 F.3d 73 (2d Cir. 1998).........................................21

*Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010) ...................... *passim*

*Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005) ........................ 39,40

*First Medical v. Vega Ramos*, 479 F 3d 46 (1st Cir. 2007)............................... 40,48

*Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404 (5th Cir. 2010) .................33

*General Surgical Assocs., P.A. v. Humana Health Plan of Tex., Inc.*,
   2015 U.S. Dist. LEXIS 54091 (W.D. Tex., Mar. 17, 2015) ......................... 46,47

*Gerald v. Univ. P.R.*, 707 F.3d 7 (1st Cir. 2013) ......................................9

*In re Universal Serv. Fund Tel. Billing Practice Litig.*,
   619 F.3d 1188 (10th Cir. 2010).......................................................33

*K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907 (1st Cir. 1989).....................52

*Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982) .......................................8,16

*Lujan v. United States Dep't of Interior*, 673 F.2d 1165 (10th Cir. 1982) .............22

*McBee v. Delica Co.*, 417 F.3d 107 (1st Cir. 2005) ................................11

*MCS v. Equipo de Convalecencia*, 587 F. Supp. 2d 384 (P.R.D. 2008) ...... 41,43,48

*Medical Card System v. Equipo de Convalecencia*,
  587 F.Supp.2d 384 (D.P.R. 2007)........................................................35

*Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5 (1st Cir. 1990).............10

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .................................................. 23,24

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986)...............10

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)...................................................10

*Moron-Barradas v. Dep't of Educ.*, 488 F.3d 472 (1st Cir. 2007) ................... 16-17

*N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y.*,
  801 F. Supp. 2d 126 (S.D.N.Y. 2011)..................................................46

*Nashoba Communs. Ltd. P'ship No. 7 v. Town of Danvers*,
  893 F.2d 435 (1ˢᵗ Cir. 1990).......................................................... *passim*

*Ocasio-Hernández v. Fortuño-Burset*, 777 F.3d 1 (1st Cir. 2015)...........................9

*Oficinas Medicas, Inc. v. De Melecio*, 47 F. Supp. 2d 174 (D.P.R. 1999)........ 18,19

*Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015)...............................................23

*Philip Morris Inc. v. Harshbarger*, 122 F.3d 58 (1st Cir. 1997).............................24

*Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) .......... 10-11,12

*Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58 (1st Cir. 2008)....................17

*Retail Clerks v. Schermerhorn*, 375 U.S. 96 (1963).................................................24

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ...................................... 23,29

*Salahuddin v. Jones*, 992 F.2d 447 (2d Cir. 1993) ............................................ 21-22

*San Remo Hotel, L.P. v. City & Cty. of S.F.*,
  545 U.S. 323, 125 S. Ct. 2491 (2005).................................................21

*Schilling v. Rogers*, 363 U.S. 666 (1960) ..................................................14

*Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324 (11th Cir. 2015) ...................32

*Sprietsma v. Mercury Marine*, 537 U. S. 51 (2002) ................................................23

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)............................. 11,13

*Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31 (2d Cir. 2013) ................. 32-33

*U.S. v. Fleet Bank*, 288 F.3d 22 n.7 (1st Cir. 2002)...................................................51

*Uhm v. Humana*, 620 F.3d 1134 (9th 2010) ....................................................... 42,44

*Uhm v. Humana, Inc.*, 540 F.3d 980 (9th Cir. 2008).................................................42

*United States v. Owens*, 54 F.3d 271 (6th Cir. 1995) ...............................................51

*Walsh v. Int'l Longshoremen's Asso.*, 630 F.2d 864 (1st Cir. 1980) .......................21

*Williams v. North Carolina*, 325 U.S. 226 (1945)...................................................21

*Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597 (1991) .............. 23,43,48,51

*Wyeth v. Levine,* 555 U.S. 555 (2009) ........................................................... *passim*

### Cases (*Puerto Rico)*

*In re Pagan Colon*, 100 D.P.R. 223 (1971) ..........................................................20

### Others

70 Fed. Reg. 4194-01, 4320 (Jan. 28, 2005)......................................................45,48

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

MMM HEALTHCARE, INC.; PMC MEDICARE CHOICE, INC.

Plaintiffs - Appellants

v.

THE COMMONWEALTH OF PUERTO RICO;
OFFICE OF THE INSURANCE COMMISSIONER OF PUERTO RICO;
ANGELA WEYNE-ROIG, Insurance Commissioner of Puerto Rico

Defendants - Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

_____

**BRIEF FOR APPELLEES**

_____

# I.  COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

D. The Court is without jurisdiction to entertain this matter as this case does not arise under federal law.

E. This matter has been decided by a final state court judgment, owed Full Faith and Credit by this Court, *res judicata* barring review.

F. The Puerto Rico Prompt Payment of Claims to Health Services Providers Act, 26 L.P.R.A. §§ 3001-3008, is not preempted by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 42 U.S.C. § 1395w-26(b)(3).

G. Equity Favors OIC, and MMM comes to the Court with unclean hands.

## II. COUNTERSTATEMENT OF THE CASE

### A. Proceedings Below

The present controversy began when Plaintiff-Appellants MMM Healthcare, Inc. ("MMM") and PMC Medicare Choice, Inc. ("PMC") attempted to pressure a number of laboratories into a new contract that was more onerous to the laboratories than the existing agreement. On November 26, 2012 the Office of the Insurance Commissioner ("OIC") initially settled the dispute and issued a Resolution deciding against Plaintiff-Appellants MMM and PMC, that the Medicare Prescription Drug, Improvement, and Modernization Act of 2003's ("MMA") language in 42 U.S.C. § 1395w-26(b)(3) does not preempt Puerto Rico's Prompt Payment of Claims to Health Services Providers Act, P.R. Laws Ann. § 3001 et. seq., tit. 26 ("Prompt-Payment Act"). MMM and PMC appealed the OIC's Resolution to the Puerto Rico Court of Appeals ("PRCA") on December 21, 2012. (Docket 1, ¶4.10). See *Comisionado de Seguros v. MMM, PMC*, KLRA201201176.

Subsequently, on September 3, 2013, MMM and PMC filed a complaint in federal court for injunctive and declaratory relief against the OIC and Weyne-Roig, Commissioner of the OIC, alleging that the Prompt-Payment Act is preempted by § 1395w-26(b)(3); the same argument it raised to no avail before the OIC, and appealed to the PRCA.

On August 12, 2014 the PRCA issued judgment disposing of the issue raised in the instant complaint and holding that the MMA does not preempt the Prompt-Payment Act. (Docket 46; Docket 50-1). The P.R. Supreme Court denied Plaintiff-Appellants' petition to review the PRCA's judgment on December 5, 2014 (Docket 59), and their motion to reconsider on March 20, 2015. (Docket 61). Upon the denial of that motion for reconsideration, the PRCA's judgment became final.

Subsequently, the District Court ("PRD") instructed the parties to move for summary judgment. (Docket 62). Accordingly, each party filed their respective briefs and oppositions. (Dockets 70-72, 77-78).

On September 19, 2016, the PRD granted Defendants' Motion for Summary Judgment and denied Plaintiff-Appellants'. (Docket 87). The PRD adopted the PRCA's judgment finding that the Prompt-Payment Act was not pre-empted by § 1395w-26(b)(3). (Docket 87,88). On October 14, 2016, Plaintiff-Appellants appealed. (Docket 89).

### B. Counterstatement of Facts

MMM and PMC are organizations authorized to partake in the Medicare Advantage ("MA") program that contract with health service providers –such as laboratories– to provide health benefits coverage to individual beneficiaries of the MA program.

On June 14, 2012 MSO, an agent of MMM and PMC, sent letters to its MA network of laboratories, unilaterally informing that new contracts would have to be signed. (Docket 19-4, ¶3). MSO representatives made calls and visited many of these laboratories to pressure them into hastily signing the new contracts. (Docket 19-4, ¶¶6,7,9,20,35,50,61). In these calls and visits, MSO representatives threatened that the labs would be excluded from the provider network, services would be cancelled and billing would be impacted if the contracts were not signed urgently. (*Id.* ¶¶22,36,39,53,62; Docket 50-1, p.4).

Although MSO representatives told many of the laboratories that the proposed new contract did not significantly change their relationship with MMM and PMC, this was not the case. First, the **proposed contract would introduce MSO as a party and give MSO the power to group treatment codes and force changes to the existing rates on the agreed upon individual treatment codes**. (Docket 50-1, p.28). Second, the proposed contract effectively reduced rates for services paid by MMM and PMC to the lab providers by 15%. (Docket 50-1, p.3-4; Docket 19-4, p.4-11). Also, the new proposed contract would change the scope of the law applicable to the existing contract. While section 15.6 on "Applicable Law" of the existing contract provided that "[t]his Agreement shall be governed by federal and Commonwealth of Puerto Rico law, and is subject at all times to the approval of the appropriate regulatory authorities…" (Docket 19-4, ¶72), section

1.3 of proposed new contract provided that:

> 1.3 <u>Applicable Law</u> means such federal state and Commonwealth of Puerto Rico laws, rules and administrative regulations and guidance, including manuals guidelines, operational policy letters, court decisions and written directions to Health Plans by CMS, the Puerto Rico Office of the Insurance Commissioner, or any other governmental body with authority over Health Plans. Applicable Laws includes Medicare Program Requirements and all applicable requirements of the Puerto Rico Health Insurance Administration (Administración de Seguros de Salud de Puerto Rico or 'ASES').

Docket 19-4, ¶74

Accordingly, although the proposed contract carried significant changes to the detriment of the laboratories, **both the existing contract and the proposed new contract specifically incorporate the law of the Commonwealth of Puerto Rico.** In fact, the proposed new contract would have incorporated the Prompt-Payment Act more explicitly. (Docket 19-4, ¶75).

Many of the laboratories objected to the proposed contract, and one of them filed an administrative complaint against Plaintiff-Appellants before the OIC for unfair and deceptive practices in attempting to skirt the existing contract and force a new one upon the laboratories. (Docket 19-4, ¶¶26,32). The P.R. Association of Private Clinical Laboratories ("Association") would follow suit and, on behalf of its members, petitioned the OIC to intervene. (Docket 40, ¶4).

Acting on the laboratories' claims, the OIC held a hearing on September 4, 2012, (Docket 40, ¶7), and issued an order on November 26, 2012 finding that:

5

> The Organizations [MMM and PMC], through their representative ["MSO of Puerto Rico, Inc." or "MSO"], with the purpose of compelling the laboratories to sign the new proposed contract, incurred in acts of coercion, prohibited by Article 27.030 of the Puerto Rico Insurance Code, supra, by suggesting that they would not pay for services rendered, that they would be excluded from the network or providers, by threatening to cancel the contracts without complying with the terms for termination provided in the contracts.

Docket 19-4, p.37

Plaintiff-Appellants sought judicial review of the OIC's decision of November 26, 2012. (Docket 1, ¶4.10). In the meantime, the present complaint was filed on September 3, 2013, parallel to the ongoing state proceeding and almost one year after the OIC ruled against Plaintiff-Appellants on the very same issue now before the Court. (Docket 1). So, after the OIC's Resolution, Plaintiff-Appellants found the state forum not to their liking, and opted to shop elsewhere.

In what would ultimately become a final judgment, the PRCA affirmed the OIC's determination rejecting preemption. (Docket 50-1). The PRCA found that "the intent to prohibit all state legislation does not arise from the same [the Federal statute]; on the contrary, *the legislative history shows a clear concern about the insurer-provider relationship*. In fact, the legislation and the legislative history clearly establish a specific requirement that contracts between insurers and providers contain a prompt pay clause." (Docket 50-1, p.14). Accordingly, the PRCA held that,

> [f]rom the foregoing, we can conclude that Congress did not have the
> intent to displace all state legislation; rather, the federal legislation
> only required that contracts between insurers and providers include a
> prompt pay clause. As we can see, it did not establish specific
> standards in relation to provider payments. On the other hand, the
> state legislation supplemented the federal legislation by establishing
> the period of time insurers will have to pay provider claims. The two
> pieces of legislation are supplementary and perfectly valid.

*Id.* at 14-15.

Plaintiff-Appellants filed a *certiorari* petition with the P.R. Supreme Court
(Docket 55), which was denied (Docket 57). And on March 20, 2015, they moved
for reconsideration, to no avail (Docket 61). The PRCA's judgment thus became
final.

Upon conclusion of the state proceedings, on summary judgment, the PRD
adopted the PRCA's judgment. After careful evaluation, the PRD was persuaded
by Section II.A.i of the PRCA judgment, and also found that the Prompt-Payment
Act is not preempted by the MMA. (Docket 87, p.2).

In sum, Plaintiff-Appellants have struck out on their third turn at the bat, and
now seek a fourth. And although the purported substantive issue at hand is
whether the Prompt-Payment Act is preempted by the MMA –and it is not- what is
really before this court is Plaintiff-Appellants' defense to an anticipated breach of
contract suit, thinly veiled as a federal question. The Court thus has no jurisdiction
to hear this case.

In any event, the matter has been addressed on the merits by a final state court judgment, and the Full Faith and Credit clause stands in the way of this quintessential forum shopping venture. This appeal should thus be dismissed.

## III. SUMMARY OF THE ARGUMENT

Plaintiff-Appellants' complaint does not present a federal question. It is an anticipated federal defense to a state breach of contract suit originating out of their own arbitrary, unfair and deceptive practices. Federal courts thus have no jurisdiction to hear this suit. *Nashoba v. Town of Danvers*, 893 F.2d 435, 438 (1st Cir. 1990)("If the defendant's threatened suit arises solely or most importantly under state law, and the plaintiff's complaint merely anticipates a defense, there is no jurisdiction.").

Nonetheless, even if the Court finds it has jurisdiction to hear this case, this matter has been decided on the merits by a final state court judgment –the PRCA's– and the Full Faith and Credit clause of the U.S. Constitution bars review of that judgment on *res judicata* grounds. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)("[S]ection 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

In any event the Prompt-Payment Act is not preempted by the MMA. The PRD, after careful consideration of the parties' respective contentions and the

record as a whole, adopted Section II.A.i. of the PRCA's judgment and correctly found that the Prompt-Payment Act is not preempted by § 1395w-26(b)(3) of the MMA because Congress has expressed no intent to do so. The Prompt-Payment Act is not preempted by section 1395w-26(b)(3) because the statute's preemptive language does not address the relationship between MA organizations and providers, and is clearly limited to MA plan standards. **The statute contains very restrictive language that limits preemption to "standards" for "MA plans" "offered by MA organizations"** 42 U.S.C. 1395w-26(b)(3).

Also, CFR provisions here do not fall within the purview of the preemption statute and thus carry no preemptive force. In any event, the CFR merely directs that the contracts between the "MA organizations and the providers must contain a prompt payment provision", 42 C.F.R. 422.520(b)(1), and allows for supplementary state legislation.

## IV. STANDARD OF REVIEW

Summary judgment is called for when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Gerald v. Univ. P.R.*, 707 F.3d 7, 16 (1st Cir. 2013). A district court's grant of summary judgment is reviewed de novo. *Ocasio-Hernández v. Fortuño-Burset*, 777 F.3d 1, 4 (1st Cir. 2015).

In reviewing the summary judgment record, the court shall only accept documented facts and may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

Here, both parties moved for summary judgment, and there are no core facts in dispute.

## V. ARGUMENT

### A. The Court is without jurisdiction to entertain this matter, as Plaintiff-Appellant's complaint is a preemption defense to an anticipated breach of contract suit which does not arise under federal law.

A court must resort to the well pleaded complaint rule in order to determine whether it can hear a matter based on arising under jurisdiction. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Preemption - normally a defense- is not an exception to the well pleaded complaint rule and thus cannot bestow jurisdiction on a court where the well pleaded complaint does not aver a federal cause of action. See *Nashoba*, 893 F.2d at 440 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."); see also *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248

(1952).[1]  Accordingly, although *Ex Parte Young* may allow for an implied cause of action where a plaintiff is suing to enjoin state actors from enforcing an unconstitutional state law, "there is no federal jurisdiction over a declaratory judgment action that in essence asserts a federal defense to a state claim." *Nashoba*, 893 F.2d at 440; *Wycoff*, 344 U.S. at 248.  Therefore, when a party has knowingly and voluntarily assumed a contractual obligation to abide by state law, it cannot later hide behind a purported action for preemption, and fabricate jurisdiction where none lies.  *Nashoba*, 893 F.2d at 438.

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). Parties may raise, and the court must address and determine, jurisdiction at any point in a proceeding. *McBee v. Delica Co.*, 417 F.3d 107, 127 (1st Cir. 2005).

On the issue of jurisdiction, Plaintiff-Appellants' case mirrors that of plaintiffs in *Nashoba v. Danvers* and should thus be dismissed for lack of jurisdiction.  In *Nashoba*, a cable service provider – Nashoba Communications LP ("Nashoba") – brought suit in federal court for declaratory relief against the Town

---

[1] Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened state cause of action.

*Wycoff*, 344 U.S. at 248

of Danvers, arguing that Danvers's attempt to enforce a contract to freeze cable rates was preempted by the Cable Communications Policy Act of 1984, 47 U.S.C. § 543 ("Cable Act"). Danvers granted Nashoba a license to provide cable service to town residents, and the license agreement provided that Nashoba would not raise rates for a period of two years. *Nashoba*, 893 F.2d at 436. Before two years had passed, Nashoba sent a letter to subscribers announcing it would eliminate its basic subscription program and raise rates on its remaining package. *Id*. The Danvers Town Counsel responded to Nashoba that the rate increase was contrary to the existing agreement, and that it would recommend to the Danvers Board of Selectmen to impose penalties and seek injunctive relief to bind Nashoba to the contract's terms. *Id*. at 437. Nashoba brought federal suit for injunctive and declaratory relief, arguing that the rate freeze provision in the license agreement was preempted by the Cable Act. *Id*. The district court granted Nashoba's petition for injunctive relief, and forewent application of the well pleaded complaint rule. *Id*. Danvers appealed to this Court.

The First Circuit reversed the lower court's judgment, and found that jurisdiction was lacking, since Nashoba's suit was merely a federal defense to an anticipated suit from Danvers for breach of contract. The Court reaffirmed the vitality of *Wycoff* and set out the First Circuit's *Wycoff* test:

> [W]e first ascertain whether the federal right asserted by a declaratory judgment plaintiff is nothing more than an anticipatory defense in

response to the defendant's threatened suit. Then we look at the character of the impending state court action to see if there is a substantial federal question. If the defendant's threatened suit arises solely or most importantly under state law, and the plaintiff's complaint merely anticipates a defense, there is no jurisdiction.

*Nashoba*, 893 F.2d at 438 (citations omitted)

The First Circuit applied this analytical framework, noted that the Cable Act

offers no cause of action for suits such as Nashoba's, and found that,

> because Danvers needs to allege only that a rate increase violates a provision of a state law contract, and perhaps also is inconsistent with the Cable Act, and Nashoba could answer with the converse insubstantial federal defense, we conclude there is no right or immunity created by federal law which is an essential element of Danvers' threatened cause of action.

*Nashoba*, 893 F.2d at 439

The Court further noted that *Ex Parte Young* was inapposite where, as here,

"Danvers and Nashoba entered into a contractual agreement as a result of a

competitive bidding process," and Nashoba agreed that "they would honor a rate

freeze for at least the first two years of operation" *Nashoba*, 893 F.2d at 440.

"Danvers intends only to enforce this aspect of the license agreement" and

asserting a federal defense to an anticipated breach of contract suit, as Nashoba

attempted, does not confer jurisdiction. *Id*.

Plaintiff-Appellants have likewise not met their burden to establish that this

court has arising under jurisdiction to entertain this suit. *Steel Co. v. Citizens for a

Better Env't*, 523 U.S. 83, 104 (1998). In the only averment of their complaint

relating to jurisdiction, (Docket 1, ¶ 2.3), Plaintiff-Appellants allege merely that the action arises under 42 U.S.C. § 1305, and the MMA's section 1395w-26, neither of which are a grant of jurisdiction to federal courts, or a cause of action for this sort of suit. They also point towards 28 U.S.C. §§ 2201-2202, but the Declaratory Judgment Act is not an independent source of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

The complaint is barren on what it is that creates a federal question that the Court may hear. Perhaps most telling, is Plaintiff-Appellants' feeble attempt to tie their suit together by claiming that the "Prompt Payment of Claims to Health Services Providers Law is preempted as it its 'inextricably intertwined' with a claim for medical benefits". (Appellants Brief at p.39). A claim for "medical benefits" under the Medicare program is -clearly– a claim from an individual program beneficiary that she or he is owed coverage under a MA policy, and is unrelated to any issue now before the Court. See *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1142 (9th Cir. 2010).

Plaintiff-Appellants cannot attempt to argue jurisdiction for the first time on appeal, as they are bound by the well pleaded complaint rule. In any event, their attempt to do so is scant and wholly undeveloped, and has thus been waived. See *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)(Appellate courts need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.")[2]

As was the case with Nashoba, Plaintiff-Appellants' purported suit for injunctive relief on preemption grounds is a red herring, and a disguised attempt to seek a federal court's aid in dodging a contractual obligation it knowingly and voluntarily assumed.  The facts found by the OIC, adopted by the PRCA and, in turn, by the PRD, have not been challenged by Plaintiff-Appellants.  Accordingly, although this action is styled as a suit between private entities as plaintiffs –MMM and PMC– against government actors, what is genuinely at stake is the contract between MMM and PMC and the provider laboratories.  After voluntarily and knowingly assuming obligations in its agreement with the laboratories –among these, rates and the scope of applicable law– Plaintiff-Appellants now anticipate enforcement actions from the OIC and suits from laboratories and have raised a federal defense disguised as a suit for injunctive relief.  *Nashoba* F.3d 893 at 438. The anticipated suit comes from laboratories and the OIC, who've complained that Plaintiff-Appellants' attempt at forcing a new contract is a breach of their existing agreement.  In response, Plaintiff-Appellants have raised preemption as a defense. No material federal question here can be derived, and Plaintiff-Appellants

---

[2] Similarly, Plaintiff-Appellants make no attempt to bring a complete preemption argument, and bring only an express preemption argument. (Docket 1,1.2,7.4).  And although, as discussed, *Ex Parte Young* is inapposite to this case, Plaintiff-Appellants make no attempt to averr any exception to the well pleaded complaint rule, and have thus waived any such argument. *Aulson*, 83 F.3d at 3. Any attempt to bring a complete preemption argument at this point, is also barred by *Zannino*, 895 F.2d at 16 as well as *res judicata*.

complaint is a veiled attempt "to engage in a preemptive strike' aimed at exploding the state suit threatened" by the OIC and the laboratories.  *Id.*

Plaintiff-Appellants attempt to skirt their contractual obligations and seek the Court's blessing to do so by way of a defense to a state court action masquerading as a federal complaint that cannot vest this Court with jurisdiction. Therefore, this suit must be dismissed.

### B. This matter has been decided by a final state court judgment, owed Full Faith and Credit by this Court, *res judicata* barring review.

It is constitutional bedrock that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1.  Congress codified this constitutional mandate in 28 U.S.C. § 1738, providing that the "judicial proceedings . . . [of any state, territory or possession] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.  Accordingly, "[s]ection 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, (1982).  "The rules of preclusion apply equally to judicially reviewed administrative agency decisions, such as *Flor. Kremer v. Chem. Constr. Corp.*" *Moron-Barradas v. Dep't of Educ.*, 488 F.3d 472,

479 (1st Cir. 2007). And "the fact that a suit raises a federal question or seeks to vindicate federal constitutional rights does not blunt the force of this command." *Cruz v. Melecio*, 204 F.3d 14, 18 (1st Cir. 2000)

Puerto Rico law requires that the party asserting *res judicata show*: "(i) the existence of a prior judgment on the merits that is 'final and unappealable'; (ii) a perfect identity of thing or cause between both actions; and (iii) a perfect identity of the parties and the capacities in which they acted." *Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 69 (1st Cir. 2008); see also *Moron-Barradas*, 488 F.3d at 479 ("Under Puerto Rico law, *res judicata* applies when there is 'the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.'") (quoting P.R. Laws Ann. tit. 31, § 3343).[3]

Plaintiff-Appellants filed this complaint on September 3, 2013, claiming that § 1395w-26(b)(3) preempts the Prompt-Payment Act:

> [T]he Medicare Act contains a very broad, express preemption clause. The statute provides that "[t]he Secretary shall establish by regulation other standards . . . for [MA organizations] and plans consistent with, and to carry out, this part." 42 U.S.C. § 1395w-26(b)(1). It further provides, under a sub-paragraph headed "Relation to State Laws": "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans

---

[3]This provision encompasses both of the two traditional aspects of *res judicata*: claim preclusion and issue preclusion. Under Puerto Rico's res judicata scheme, claim preclusion binds parties from litigating or relitigating any claim that was or could have been litigated in a prior adjudication and prevents claim splitting; issue preclusion, on the other hand, forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties.

*Berríos v. González-Rosario*, 630 F.3d 7, 12 (1st Cir. 2010)(internal citations omitted)

which are offered by MA organizations under this part." § 1395w-26(b)(3)

Docket 1, ¶1.8

 Based on this language, Plaintiff-Appellants loftily claim that any and all state laws that are not related to licensing or solvency requirements, are preempted by § 1395w-26(b)(3).

On review from the OIC's Resolution, Plaintiff-Appellants brought that very same issue before the PRCA. "As the Supreme Court of Puerto Rico has explained, a "cause" includes 'the principal ground, the origin or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties", *Baez-Cruz v. Municipality of Comerio*, 140 F.3d 24, 30 (1st Cir. 1998), whereas the "identity of things" requirement is met when "both things refer to the same matter, even if in one action the thing is addressed in its entirety and in the other only partially, or if the thing has suffered an alteration in its value between both actions." *Oficinas Medicas, Inc. v. De Melecio*, 47 F. Supp. 2d 174, 180 (D.P.R. 1999). The question posed and the matter addressed by the PRCA –whether section 1395w-26 preempts the Prompt-Payment Act– is the same question now before this Court. Accordingly, there is perfect identity of "cause" and "thing" between the federal and state actions. *Dalmau*, 544 F.3d at 69.

On August 12, 2014 the PRCA agreed with the OIC's determination and decided that § 1395w-26(b)(3)'s language is narrower in scope than Plaintiffs purport, and does not preempt the Prompt-PaymentAct:

> After an examination of [][§ 1395w-26(b)(3)], the [][OIC] concluded [] that there is no explicit or implicit intent of Congress to prohibit all state legislation. We believe that the Commissioner's ruling is correct… [T]he intent to prohibit all state legislation does not arise from the same; on the contrary, the legislative history shows a clear concern about the insurer-provider relationship.
>
> ….
>
> These state regulations, in keeping with the purpose of the federal legislation and the concern of Congress, established a specific period to pay providers for their services. Far from conflicting with the federal legislation, the  Act delved deeper and broadened the matters addressed in the federal legislation. From the foregoing, we can conclude that Congress did not have the intent to displace all state legislation …. There is no total displacement of the state legislation and said state legislation is not in conflict with the federal legislation.

Docket 50, p.13-15

Plaintiff-Appellants sought review from the P.R. Supreme Court, and their petition for certiorari was denied on December 11, 2014. (Docket 57).  On March 20, 2015 Plaintiff-Appellants' motion for reconsideration was also denied. (Docket 61).  At that point, Plaintiff-Appellants exhausted all appellate avenues and the PRCA's judgment on the merits became final and unreviewable.  *Melecio*, 204 F.3d at 20 (1st Cir. 2000) ("a judgment becomes "final y firme" when no further

appeal from it can be taken." (citing *In re Pagan Colon*, 100 D.P.R. 223, 100 P.R.R. 220, 224 (1971)).

Finally, the parties in the state court proceeding are the same: both MMM and PMC were the sole respondents in the OIC proceeding, and the sole petitioners to the PRCA, while the OIC was their sole adversary. And although Plaintiff-Appellants have included the Commonwealth and Weyne-Roig as Insurance Commissioner of Puerto Rico in their federal action, privity binds them and the identity of parties requirement is met. *González-Rosario*, 630 F.3d at 14(identity of parties "is satisfied whenever one party acts for or stands in the place of another in relation to a particular subject matter or… whenever those parties amount to the same party really interested.")(citations omitted). [4]

The elements of res judicata and issue preclusion are present here.[5] As required under Puerto Rico law, there is a perfect identity of the parties as the parties to the state and federal proceedings are identical or bound by privity. *Id.* at 14. There is perfect identity of cause and thing, as Plaintiff-Appellants would have this Court review the very same issue that was decided by the PRCA. *Baez-Cruz*, 140 F.3d at 30. Finally, there is a final state court judgment on the matter,

---

[4] See also *González-Rosario*, 630 F.3d at 14 ("[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is res judicata in relitigation of the same issue between that party and another officer of the government.")

[5] To the extent that Appellants may now claim that their argument in the federal proceeding differs from that in the state court in that the former was a field preemption argument, whereas in the latter they are advancing an express preemption argument, res judicata and claim preclusion applies equally to bar review of the PRCA's final judgment on the matter. *Id.* at 12 ("This provision encompasses both of the two traditional aspects of res judicata: claim preclusion and issue preclusion").

addressing and deciding the issue on the merits, as Plaintiff-Appellants exhausted all appellate remedies, and the PRCA's judgment is final, firm and unreviewable. *Melecio*, 204 F.3d at 20.

The finality, comity and federalism concerns that underlie the Full Faith and Credit clause of the United States Constitution are paramount. See *San Remo Hotel, L.P. v. City & Cty. of S.F.*, 545 U.S. 323, 345, 125 S. Ct. 2491, 2505 (2005) ("weighty interests in finality and comity trump the interest in giving losing litigants access to an additional appellate tribunal."). But the Forefathers' concern with the deference due by federal courts to state court judgments went further and prompted the Drafters to enshrine the matter in the Constitution itself and give the maxim a clause of its own. See *Williams v. North Carolina*, 325 U.S. 226, 228 (1945) ("In short, the Full Faith and Credit Clause puts the Constitution behind a judgment instead of the too fluid, ill-defined concept of 'comity.'"). Furthermore, *res judicata* is clearly dispositive here and therefore, the Court must attend to the matter and afford due respect to the PRCA's final judgment. See *Walsh v. Int'l Longshoremen's Asso.*, 630 F.2d 864, 867 (1st Cir. 1980)(the Court found *res judicata* applied *sua sponte*, even though the parties had not raised the matter on their own.); see also *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998) (A defendant's failure to raise *res judicata*, does not deprive a court of the power to dismiss a claim on that ground.); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.

1993); *Lujan v. United States Dep't of Interior*, 673 F.2d 1165, 1168 (10th Cir. 1982); *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980).

Hence, although Plaintiff-Appellants would have this Court sanction their forum shopping venture, the Full Faith and Credit Clause stands in the way. *Melecio*, 204 F.3d at 24 (["Appellants'] timing raises the discomfiting specter of forum-shopping -- and we are free to factor this circumstance into the decisional calculus."). The Court cannot allow Plaintiff-Appellants to dupe the Constitution, have a fourth turn at the bat and detour around a final state court judgment on the merits that is unpalatable to them. *Id*. Accordingly, this appeal must be dismissed.

### C. The Puerto Rico Prompt Payment of Claims to Health Services Providers Act, 26 L.P.R.A. § 3001 et. seq., is not preempted by 42 U.S.C. § 1395w-26(b)(3)

Appellants claim that the "Prompt Payment Act determine[s] the terms for payment between the parties" and this "state law interferes with the contractual autonomy set forth in the federal law" and is expressly preempted by the MMA. (Docket 1, ¶6.4). Furthermore, Plaintiff-Appellants complain that the provisions of the Puerto Rico law "improperly impose claims-processing time limitations, administrative and interest penalties, and other regulatory requirements on MA organizations and their administrators." (Docket 1, ¶7.4). Moreover, Plaintiff-Appellants allege that 42 C.F.R. § 422.520 "allows [plaintiffs], as MA providers, to negotiate the terms of payment with its providers." (*Id*. at ¶6.4).

### 1. Preemption doctrine

Pursuant to Article VI, Clause 2 of the U.S. Constitution, Congress may consequently pre-empt, *i.e.*, invalidate, a state law through federal legislation", through express language in a statute" or "may implicitly pre-empt a state law, rule, or other state action." *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1594-1595 (2015) (citing *Sprietsma* v. *Mercury Marine*, 537 U. S. 51, 64 (2002)).

Congress may displace state law through express preemption provisions. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). Courts' task is to 'identify the domain expressly pre-empted by that language.' *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)(citations omitted). The "task must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Courts may find preemption only where it is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)(citations omitted).

When determining the intent of Congress, the executive's regulations and interpretations of a statute do not speak to congressional intent. Only Congress may speak to what its intent is. *Wyeth v. Levine, 555 U.S. 555, 577 (2009).*

Ultimately, the two cornerstones of the Supreme Court pre-emption jurisprudence provide clear guidance. "[F]irst, 'the purpose of Congress is the

ultimate touchstone in every pre-emption case.'" *Wyeth*, 555 U.S. at 565(citing *Medtronic, Inc.* v. *Lohr*, 518 U.S. 470, 485 (1996)(internal quotation marks omitted)); *see also Retail Clerks* v. *Schermerhorn*, 375 U.S. 96, 103 (1963). "Second, [i]n all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. at 565 (citations omitted). Matters of health and safety are clearly within the historic police powers of states. See *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 67 (1st Cir. 1997)(citing *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605 (1991). In any event, unless Congress has manifestly ordained otherwise, states may create supplementary legislation. *Mortier*, 501 U.S. at 613.

### 2.     The plain language of the federal statute

The Court's analysis must turn, first and foremost "on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' *CSX Transp*, 507 U.S. at 664. The plain language of 1395w-26 shows that it was not Congress' intent to displace state laws governing health service providers or their relationship with MA Organizations. The statute is clear that

preemption displaces only state regulation of "standards" for "MA Plans" offered by "MA Organizations." 42 U.S.C. § 1395w-26(b)(3).

The Social Security Act, as amended by the MMA, at 42 U.S.C. § 1395w-26 (Establishment of standards) contains two sub-sections. Sub-section "[a]" directs the Secretary of Health and Human Services ("Secretary") to establish "solvency standards for the provider-sponsored organizations" –MA Organizations- on an "expedited basis and using a negotiated rulemaking process" concerning the standards "described in section 1395w-25(c)(1)" "relating to the financial solvency and capital adequacy of the organization." 42 U.S.C. § 1395w-26(a)(1)(A). The statute itself identifies the type of standards it is referring to, i.e. financial solvency and capital adequacy. In other words, the scope of 1395w-26(a) is limited to financial solvency and capital adequacy requirements for provider-sponsored organizations.

Subsection "(b)" is entitled "Establishment of other standards" – hence distinct from those of Sub-Section (a) - and directs the Secretary to "establish by regulation other standards" "**for Medicare + Choice organizations and plans",** "to carry out, this part." 42 U.S.C. § 1395w-26(b)(1). This provision is further nuanced by subsection 1395w-26(b)(2), which limits the kind of standards that the Secretary is charged with establishing, to those set out in section 1395mm. 42 U.S.C. § 1395w-26(b)(1)("Consistent with the requirements of this part, standards

established under this subsection shall be based on standards established under section 1395mm of this title to carry out analogous provisions of such section."). "Medicare Choice" was the moniker used for what is now Medicare Advantage organizations and plans.

Subsection (b)(3) – the provision at issue here – sets out the scope of preemption for Title 42, Chapter 7, Subchapter XVIII , Part C of the U.S.C. titled "Medicare Choice Program", or §§ 1395w-21 et seq.:

> (3) Relation to State laws
> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to **MA plans** which are offered by **MA organizations** under this part.

42 U.S.C. § 1395w–26(b)(3)(emphasis provided)

The plain language of subsection 1395w-26(b)(3) indicates that states may not create "standards" for **MA Plans** that are offered by MA Organizations. Congress' preemptive intent has reserved that power for the Secretary. Congress chose this language purposefully, and further provided a definition for "Medicare Advantage Organizations":

> (1) Medicare Choice organization
> The term "Medicare Choice organization" means a public or private entity that is certified under section 1395w–26 of this title as meeting the requirements and standards of this part for such an organization.

42 U.S.C. § 1395w–28(a)(1)

More importantly, Congress also provided a definition for Medicare Advantage Plans:

> (1) Medicare Choice plan
> The term "Medicare Choice plan" means health benefits coverage offered under a policy, contract, or plan by a Medicare Choice organization pursuant to and in accordance with a contract under section 1395w–27 of this title.

42 U.S.C. § 1395w–28(b)(1)

These definitions apply to Title 42, Chapter 7, Subchapter XVIII, Part C of the U.S.C. titled "Medicare Choice Program". Accordingly, the scope of exclusive regulatory power allowed to the Secretary under §§ 1395w–21 et seq. is limited only to "**standards**" for **MA Plans**, that are in turn offered by MA Organizations, as both of those terms are defined in the statute. Health service providers are nowhere mentioned.

Further to this point, the Secretary built on Congress' words and further honed the definition of "MA Organization" and "MA Plan":

> **MA organization** means a public or private entity organized and licensed by a State as a risk-bearing entity (with the exception of provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA contract requirements.

> **MA plan** means health benefits coverage offered under a policy or contract by an MA organization that includes a specific set of health benefits offered at a uniform premium and uniform level of cost-sharing to all Medicare beneficiaries residing in the service area of the MA plan (or in individual segments of a service area, under § 422.304(b)(2)).

42 CFR 422.2 – Definitions (emphasis provided)

This ends the crux of the inquiry. Congress' preemptive intent – as per the statute's plain language - encompasses only **"standards" for "MA Plans" offered by "MA Organizations"**. 42 U.S.C. § 1395w–26(b)(3). An "MA Plan" is a health benefits coverage policy offered by an MA Organization "that includes a specific set of health benefits offered at a uniform premium". 42 U.S.C. § 1395w–28(b)(1); 42 CFR 422.2. Hence, state laws that do not regulate "standards" for "MA Plans" offered by "MA Organizations" are not preempted. *Easterwood*, 507 U.S. at 664; see also *Brady v. Credit Recovery Co.*, 160 F.3d 64, 66 (1st Cir. 1998).

The practical meaning of 1395w-26(b)(3) is that states are preempted from requiring, for example, that MA Plans contain certain minimum benefits, or controls on the capitation rate. These mattes come within "MA Plan" "standards", regulated by the Secretary. But states are not preempted from regulating matters that are unrelated to MA Plan standards, and are finely tuned to certain aspects and circumstances of the MA Organization and provider relationship -which 42 U.S.C. §§ 1395w–21 et seq. does not address- and are aimed solely at safeguarding providers form abusive practices and thus the availability and stability of health services for the citizenry, a concern plainly within the police power of states. *Wyeth*, 555 U.S. at 565.

And although Plaintiff-Appellants make much of the qualification that "State licensing laws or State laws relating to plan solvency" are not preempted, that phrase must be read within the limitations of the subsection it sits in: § 1395w–26(b)(3), and leaving undisturbed those areas that Congress did not evidently and manifestly intend to preempt. *Santa Fe Elevator Corp*., 331 U.S. at 230. (Courts may find preemption only where it is the "clear and manifest purpose of Congress.")  Accordingly, the plain meaning and logical reach of 1395w–26(b)(3) with respect to that phrase is this: although states are preempted from regulating "MA Plan" "standards", they may enact legislation governing licensing matters and solvency requirements that incidentally – but not directly - may affect MA Plans.

As to section § 1395w–26(b)(2)'s "Use of current standards" provision, it further evinces the limits of preemption.  It directs that "standards established under this subsection shall be based on standards established under section 1395mm of this title to carry out analogous provisions of such section."  Thus, the "type" and "scope" of standards falling under the "other standards" provision in section 1395w-26(b)(1), is again limited, and identified as the type of standards in 42 U.S.C. § 1395mm. 42 U.S.C. § 1395w-26(b)(2).

42 U.S.C. § 1395mm's provisions are a set of regulations to govern the relationship between CMS and the federal government and HMOs that participate

in the Medicare program, and does not reach the relationship between HMOs and providers. See *Care Choices HMO v. Engstrom*, 330 F.3d 786, 787 (6th Cir. 2003)("42 U.S.C. § 1395mm, [] permits [CMS], the administrator of Medicare, to contract with private HOMs to provide replacement coverage for Medicare-eligible individuals."). Hence, drafting regulations to "carry out analogous provisions of such section" 1395w–26(b)(2), means that the Secretary is to use 1395mm – which governs the relationship between CMS and HMOs participating in Medicare – in order to develop standards **to regulate the relationship between CMS and MA Organizations** participating and offering MA Plans under the MA program.

Accordingly, standards in section 1395mm deal mostly with payments by CMS to health maintenance organizations and competitive medical plans, rates and adjustments, eligibility of organizations, duties of the organization to the enrollees, right to enroll with contracting organization in geographical area, charges, election of coverage, adjusted community rate, membership requirements, risk sharing contract, reasonable cost reimbursement contract, duration and terms of contract, payment in full, physicians, providers of services and limitation on certain physician referrals. Therefore, 1395mm is unrelated to the contracting or payment relationship between the MA organization and the provider.

**3. The Prompt-Payment Act does not regulate MA plan "standards", is within the Commonwealth's police powers and is thus not preempted by 1395w-26**

The Prompt-Payment Act is aimed at regulating prompt payment of claims to health service providers. As explained in its statement of purposes, this legislation seeks to regulate the insurer-service provider relationship in order to guarantee the proper operation of healthcare services in the interest of public health in Puerto Rico. This legislation established the specific period within which insurers shall pay for the services offered by providers, thus guaranteeing the stability of the country's healthcare system. See Puerto Rico Public Law 104-2002. Specifically, section 3002, Term for Payment of claims, provides:

> The participating provider shall submit its claims for payment for services rendered within ninety (90) days after having rendered the same, and the insurer or health services organization is bound to pay in full any claim actionable for payment within a term of thirty (30) calendar days, counting from the date that the insurer or health services organization receives the same.

P.R. Laws Ann. § 3002, tit. 26.

One of the goals of the Prompt-Payment Act goes to the heart of why this case is before the Court, and seeks to protect providers against unilateral alterations or amendments to contracts with organizations with more leverage, including, e.g. rate changes. *Id*. § 3004 ("[n]o insurer or health services organization shall refuse to pay a claim for services rendered because of unilateral alterations or amendments to the terms of the contract… including amendments to the rates.").

There are no comparable safeguards of the sort in the MMA.

Furthermore the Prompt-Payment Act is also in line with federal guidelines regarding prompt payment clause requirements in contracts, and may supplement situations where no clause of this sort is included. See 42 CFR sec. 422.520.

### 4. 42 C.F.R. § 422.520 has no preemptive effect and in any event is consistent with the Prompt-Payment Act

Federal regulatory action does not ordinarily carry preemptive effect. *Wyeth*, 555 U.S. at 577("[A]gencies have no special authority to pronounce on pre-emption absent delegation by Congress"). In the case at hand, Congress has authorized the Secretary to preempt only state laws that regulate "standards" for "MA Plans" offered by MA Organizations. 42 U.S.C. § 1395w-26(b)(3). In other words, any federal regulations that reach beyond, or otherwise attempt to circumvent the limits of 1395w-26(b)(3), do not carry preemptive force. See *Wyeth*, 555 U.S. at 577; *Del Grosso v. Surface Transp. Bd.*, 811 F.3d 83, 85 (1st Cir. 2016) ("*Wyeth v. Levine* held that agencies have 'no special authority to pronounce on pre-emption absent delegation by Congress.'").

Furthermore, the acts and pronouncements of federal administrative agencies are not owed deference on the question of preemption. *Id.*; see, e.g., *Seminole Tribe of Fla. v. Stranburg*, 799 F.3d 1324, 1338 (11th Cir. 2015)("deference to an agency's ultimate conclusion of federal preemption is inappropriate")(citing *Wyeth*, 555 U.S. at 576-77); *Steel Inst. of N.Y. v. City of New York*, 716 F.3d 31, 39-40 (2d

Cir. 2013)(holding that although executive agency appreciations of state and federal law interaction may be informative, courts cannot defer to an agency's conclusion regarding preemption); *In re Universal Serv. Fund Tel. Billing Practice Litig.*, 619 F.3d 1188, 1200 (10th Cir. 2010); see also *Franks Inv. Co. v. Union Pac. R.R. Co.*, 593 F.3d 404, 413-14 (5th Cir. 2010); *Del Grosso v. Surface Transp. Bd.*, 804 F.3d 110, 116-17 (1st Cir. 2015).[6]

Before the enactment of the MMA, the CFR contained the regulatory guidelines that relate to MA Organizations and prompt payment. 42 C.F.R. § 422.50 reads as follows:

(a) Contract between CMS and the MA organization.
(1) The contract between CMS and the MA organization must provide that the MA organization will pay 95 percent of the "clean claims" within 30 days of receipt if they are submitted by, or on behalf of, an enrollee of an MA private fee-for-service plan or are claims for services that are not furnished under a written agreement between the organization and the provider.
(2) The MA organization must pay interest on clean claims that are not paid within 30 days in accordance with sections 1816(c)(2)(B) and 1842(c)(2)(B). (3) All other claims from non-contracted providers must be paid or denied within 60 calendar days from the date of the request.
(b)(1) Contracts between MA organizations and providers and suppliers.
Contracts or other written agreements between MA organizations and providers must contain a prompt payment provision, the terms of which are developed and agreed to by both the MA organization and the relevant provider.
(2) The MA organization is obligated to pay contracted providers under the terms of the contract between the MA organization and the provider.
(c) Failure to comply. If CMS determines, after giving notice and opportunity for hearing, that an MA organization has failed to make payments in accordance with paragraph (a) of this section, CMS may provide--
(1) For direct payment of the sums owed to providers, or MA private fee-for service plan enrollees; and

---

[6] In the event further review of this case is sought, Appellees reserve any and all arguments regarding *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

(2) For appropriate reduction in the amounts that would otherwise be paid to the organization, to reflect the amounts of the direct payments and the cost of making those payments.
(d) A CMS decision to not conduct a hearing under paragraph (c) of this section does not disturb any potential remedy under State law for 1866(a)(1)(O) of the Act.

Although 42 C.F.R. § 422.50(a)(1) indirectly addresses the MA Organization and provider relationship, it is a prompt payment guideline for the contract between CMS and the MA organization; it does not speak to the relationship between the MA Organization and providers. Furthermore, the provision at "(d)" that states that the decision by a CMS declining to conduct a hearing under section "(c)" "does not disturb any potential remedy under State Law" was issued on January 28, 2005 and is, perhaps, recognition from the Secretary that state law remedies based on state prompt pay laws cannot be displaced by regulation. *Del Grosso*, 811 F.3d at 85.

Although neither section 1395w-26 nor 1395mm mention the payment methodology to providers, the Secretary published 42 C.F.R. § 422.520(b)(1), which directs that the "Contracts or other written agreements between an MA organizations and providers contain a prompt payment provision, the terms of which are developed and agreed to by both the MA organization and the relevant provider." However, this requirement of the Secretary also does not fall within the scope of preemptive power that Congress afforded to it to displace state laws regarding MA Plan standards, 42 U.S.C. § 1395w-26(b)(3) because it is not within

the scope of the "standards" identified in section 1395w-26(b)(1) and (2) and §1395mm, or those in section 1395w-26(a)(1) for **MA Plans offered by MA Organizations,** as defined in the statute.

In short, 42 C.F.R. § 422.50 does not establish a scheme for payment processes for health service providers because it cannot; these federal regulations are beyond the scope of the "standards" for "MA Plans" offered by "MA Organizations" language and thus have no preemptive force to displace the Prompt-Payment Act. *Wyeth*, 555 U.S. at 577; *Del Grosso*, 811 F.3d at 85.

Furthermore, 42 C.F.R. § 422.520(b)(1) merely directs that the contract "between the MA organizations and the providers contain a prompt payment provision." 42 C.F.R. § 422.520(b)(1). Thus, no "standards" were "established" on the prompt payment process. See *Medical Card System v. Equipo de Convalecencia*, 587 F.Supp.2d 384 (D.P.R. 2007)(because "the Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers", the contractual claims by health care providers were not preempted; "'federal law controls to the extent that federal standards exist; state common law prevails where neither Congress nor CMS has established standards.'"). Instead, the CFR only prescribes that a prompt payment clause be included in the MA Organization and provider contract, but is silent as to the parameters of payment schemes. Both Congress, and the Secretary, leave ample

room for states to supplement with laws such as the Prompt-Payment Act, particularly where contracts do not incorporate a prompt pay clause.

### 5.    Legislative Materials

When called upon to construe a statute, the plain language of the statute governs and, if clear, concludes the courts' inquiry.  See *Brady*, 160 F.3d at 66 ("In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning in all but the most extraordinary circumstance is finished.")(citations omitted).   "In other words, the court need not consult legislative history and other aids to statutory construction when the words of the statute neither create an ambiguity nor lead to an unreasonable interpretation." *Brady*, 160 F.3d at 66.

Section 1395w-26(b)(3)'s plain language is clear that it displaces only state laws that purport to establish "standards… with respect to MA Plans which are offered by MA Organizations." 24 U.S.C. 1395w-26(b)(3).  An "MA Plan" is "health benefits coverage offered under a policy, contract, or plan by a [MA] organization pursuant to and in accordance with a contract under section 1395w–27 of this title."  42 U.S.C. § 1395w–28(b)(1).  Hence, from the plain meaning of the statute Congress' intent is derived, that state laws are not preempted, so long as they do not purport to create "standards" for an "MA Plan" as defined in the

statute. No further analysis of the preemption question is required, or allowed. *Brady,* 160 F.3d at 66.

Nonetheless, Plaintiff-Appellants devote much ink and paper to what they profess is legislative history, as evidence of Congress' intent to annul state laws. (Docket 70; Appellants' Brief at 24-26, 37-38). They resort to passages from the Federal Register, wherein CMS representatives comment regarding the MMA, that are all but clear on the issue of preemption.

Plaintiff-Appellants' threshold folly is that the Federal Register does not contain Congress' expression, and only the thoughts of federal agencies which cannot speak to Congressional intent. And what little informative value these comments may have are further diminished when preemption of a state law is at issue. *Del Grosso*, 811 F.3d at 85. These materials are of no value and reliance on them is futile.

What genuine legislative history which may perhaps offer some scant informational value may be found in the Conference Report, which carries language that is consistent with section 1395w-26(b)(3). See *Disabled in Action v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000)("Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent.")

In the 852 page Congressional Conference Report for the MMA, the word "preemption" and related terms appear on few occasions[7], and only one is relevant:

> Section 232. Avoiding duplicative State regulation Present Law Medicare law currently preempts state law or regulation from applying to M+C plans to the extent they are inconsistent with federal requirements imposed on M+C plans, and specifically, relating to benefit requirements, the inclusion or treatment of providers, and coverage determinations (including related appeals and grievance processes).
>
> House Bill
>
> Section 232. Federal standards established by this legislation would supersede any state law or regulation (other than state licensure laws and state laws relating to plan solvency), **with respect to MA plans offered by MA organizations**.
>
> Senate Bill
>
> No provision.
>
> Conference Agreement Section 232. The conference agreement clarifies that the MA program is a federal program operated under Federal rules. State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency. There has been some confusion in recent court cases. This provision would apply prospectively; thus, it would not affect previous and ongoing litigation. Additionally, no state may impose a premium, or similar, tax on premiums paid to MA organizations under this bill.

C.R. on H.R. 1, Medicare Prescription Drug and Modernization Act of 2003, 149 Cong Rec H 11877, 12022

This section shows that the approved language in section 1395w-26(b)(3) closely tracks the wording proposed by the House delegation, and also limits the MMAs preemption to "standards" for "MA Plans offered by MA Organizations." The Conference Agreement that "the MA program is a federal program operated under Federal rules" and that "State laws, do not, and should not apply, with the

---

[7] C.R. on H.R. 1, Medicare Prescription Drug and Modernization Act of 2003, 149 Cong Rec H 11877, 11990, 11992, 12023

exception of state licensing laws or state laws related to plan solvency" is redundant, and sheds no further light on the matter.

Perhaps even more telling is the fact that neither chamber of Congress proposed to broaden the original text proposed by the House. Congress could have, for example, substituted the "with respect to MA plans offered by MA organizations" phrasing with the more ample term "MA Program", in order to widen the scope of preemption, but it chose not to. Congress could have also debated, proposed and approved more encompassing language for what "standards" the Secretary may approve with respect to MA Plans, but it did not do so.

Legislative history is rarely a model of clarity. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 568 (2005) ("[L]egislative history is itself often murky, ambiguous, and contradictory. Judicial investigation of legislative history has a tendency to become....an exercise in looking over a crowd and picking out your friends.")(internal citations omitted). Fortunately, the statute at issue here is clear regarding the scope of preemption, and thus forecloses the need to search for meaning beyond its plain language. *Brady*, 160 F.3d at 66. And for good reason; the rigors that Article I imposes on our government offers the citizenry the assurance that it is the elected members of the legislative branch - who are accountable to the people - that are the sole stewards of their will. *Allapattah*, 545

U.S. at 568.[8]   That is why "the authoritative statement" of Congress regarding the

preemptive scope of the MMA "is the statutory text" -which bounds preemption

only to standards for "MA Plans offered by MA Organizations"- and "not the

legislative history or any other extrinsic material." *Id*.

### 6.    Case law

This Court has considered the extent of § 1395w-26(b)(3)'s preemptive

effect once, in *First Medical v. Vega-Ramos*, 479 F 3d 46 (1st Cir. 2007).  In that

case, the plaintiff was also seeking a permanent injunction to enjoin the

"Administración de Servicios de Salud" from disqualifying it as a participant in its

MA Program.  The state law at issue then was Law 72, 24 L.P.R.A. 7033(c), which

barred MA organizations from joining the MA program "if the plan owned or

operated health facilities that could provide covered services to a MA program

covered beneficiary." *Id*. at 49.   Hence, in order to safeguard the competitive

nature of the health services market, Puerto Rico used its police powers and

enacted Law 72 to prohibit self-dealing among program participants.

In assessing the reach of § 1395w-26(b)(3), the Court stated that "Congress'

purpose in enacting § 1395w-26(b)(3) was to protect the purely federal nature of

---

[8] Judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members--or, worse yet, unelected staffers and lobbyists--both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

*Allapattah*, 545 U.S. at 568.

**[MA] plans** operating under Medicare." *Id.* at 52. Thus, this Court vacated the preliminary injunction issued by the PRD and determined that Puerto Rico Law 72 is not preempted by section 1395w-26(b)(3).

Even though the challenged law there was different to the challenged statute in the instant case -and the Court draws important distinctions between the Medicare and Medicaid programs in the territories- it sheds light concerning the analysis that this Court applies to challenges to state statutes under section 1395w-26(b)(3). The Court ultimately upheld a state law that seeks to serve the best interests of its citizenry and conveys that § 1395w-26(b)(3) does not preempt state laws that seek to protect the integrity of the Medicaid program, so long as these laws do not set "standard[s] for the operation of a [MA] plan operating under Medicare." *Id.* at 52.

The Puerto Rico District Court case of *MCS v. Equipo de Convalecencia*, 587 F. Supp. 2d 384 (P.R.D. 2008) followed and was more on target analyzing a claim that 1395w-26(b)(3) preempts contractual suits between MA organizations and health service providers. As here, *Convalecencia* sprang from MCS's attempt –an MA Organization– to unilaterally elude its contractual duties to Equipo Pro-Convalecencia ("EPC") -a health services provider– when it announced to EPC that it would no longer be honoring the supplier agreement between them. *Id.* at 386. In response, EPC indicated they would have no choice but to discontinue

services to MCS beneficiaries. *Id*. MCS brought suit to compel EPC to continue offering services to MCS beneficiaries. EPC countered that the court had no jurisdiction, since Plaintiff MCS was merely asserting state law contract claims. *Id*. Plaintiff MCS replied that jurisdiction was provided "because [] 1395w-26(b)(3), expressly preempts state law remedies and 42 C.F.R. §§ 422.504(g) [enacted standards requiring] Defendants [EPC] to provide continued benefits to plan beneficiaries." *Id*. at 387.

The Court initially examined § 1395w-26(b)(3) and reasoned that:

> The preemption provision of Medicare Part C states that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part."[]Thus, federal law controls to the extent that federal standards exist; state common law prevails where neither Congress nor CMS has established standards.[9]

*Convalecencia*, 587 F. Supp. at 387

The Court then found that "the regulations that Plaintiffs cite as standards are standards intended to regulate the behavior of MA organizations, not of healthcare providers under contract with MA organizations." *Id*. at 388("The standards require Plaintiffs to maintain continuity of care, but say nothing about Defendants' duty to comply with private contractual obligations"). There being no

---

[9] Although the District Court cites to *Uhm v. Humana, Inc.*, 540 F.3d 980, 985 (9th Cir. 2008) (withdrawn on July 22, 2009; rehearing granted and opinion reissued Uhm v. Humana, 620 F.3d 1134 (9th 2010), as support for this sentence, the District Court's own immediately preceding interpretation of 42 U.S.C. § 1395w-26(b)(3) is what supports its reasoning.

statutory or regulatory provision for "resolving disputes between MA organizations and health care providers", the PRD concluded that "Medicare Part C does not preempt contractual claims between MA organizations and health care providers". *Id*. at 388-389.

In the case at bar, the CFR establishes only that the MA and the provider must contain a prompt payment provision. 42 C.F.R. § 422.50(b)(1). Furthermore, it directs that the MA organization is "obligated" to pay the provider under the terms of said contract. 42 C.F.R. § 422.50(b)(2). However, the CFR does not establish any parameter, procedure or standard concerning promptness. Akin to this analysis, in *Convalecencia*, the Court found that because "the Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers", the contractual claims by providers were not preempted. *Convalecencia*, 587 F. Supp. at 388-89, same as here, where the MMA doesn't set parameters for prompt payment to providers by MA organizations. The CFR only establishes that the MA-provider contract must address the prompt payment issue. It thus allows for state law to apply in supplementary fashion, to govern contracts where there is no prompt pay provision, or is ambiguous on the matter. *Mortier*, 501 U.S. at 613.

In any event, this guideline of the CFR, even if it were to be labeled as a "standard", is not the sort of "standards" coming under the umbrella of the

preemption provision in 42 U.S.C. § 1395w-26(b)(3). Accordingly, the *Convalecencia* rationale is applicable and bolsters the proposition that the Prompt-Payment Act is not preempted. This same rationale is consistent with the PRCA judgment.

Although farther off point, the Ninth Circuit addressed preemption under § 1395w-26(b)(3) in *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134 (9th Cir. 2010). Section 1395w-26(b)(3) is cross-referenced in 42 U.S.C. § 1395w-112(g) as the standard of preemption applicable to Medicare Part D prescription drug plans ("PDP"), and the issue was "what qualifies as a state law or regulation 'with respect to' a PDP?" in the context of consumer claims for benefits from PDP beneficiaries. *Do Sung*, 620 F.3d at 1149. The Court found that an express provision in 42 U.S.C. § 405(g) stripped district courts of jurisdiction, and required plaintiffs to exhaust federal administrative remedies as to some of their claims before Article III review could take place. *Id*. at 1144.

The Court nonetheless entertained the preemption issue and found that the plaintiffs' fraud and false advertising state law claims were preempted by the language in § 1395w-26(b)(3), which applied to Medicare Part D by way of 42 U.S.C. § 1395w-112(g). The Ninth Circuit's decision, however, pivots on the fact that the Medicare Act thoroughly regulates advertising for PDPs - which "requires that each Part D sponsor 'shall conform to fair marketing standards,'" (citing §

1395w-21(h)(4) - and specifically defines "marketing materials", which in turn require CMS approval, 42 U.S.C. § 1395w-101(b)(1)(B)(vi). *Do Sung*, 620 F.3d at 1150-53, 56.

In contrast to the MMA's silence on the MA Organization and health service provider relationship, the statute's provisions and executive regulations regarding "marketing materials" for Medicare Part D PDPs, are the sort of "standards" for plans – prescription drug plans – that the MMA manifestly reserves exclusively for the Secretary. § 1395w-26(b)(3). In any event, he Ninth Circuit also recognized that § 1395w-26(b)(3) displaces only some, and not all, common law claims. *Do Sung*, 620 F.3d at 1156.

Another instructive case is *N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y.*, 801 F. Supp. 2d 126, 130 (S.D.N.Y. 2011) wherein the Court referenced CMS's own position on 1395w-26(b)(3) that ""regardless of the increased breadth of the preemption provision preemption operates only when CMS actually creates standards in the area regulated. To the extent CMS does not create any standards whatsoever in a particular area, CMS does not believe preemption would be warranted." *Id*. at 130(quoting 70 Fed. Reg. 4194-01, 4320 (Jan. 28, 2005)." The Court concluded that, because the matter remained largely unregulated by federal law, plaintiff HHC – a MA program health service provider – was free to pursue its common law claim for payment and unjust enrichment against WellCare of N.Y.,

an MA organization. *WellCare of N.Y.*, 801 F. Supp. 2d at 140-42. Hence, as is the case at bar, where the federal government is silent, state law may apply. *Mortier*, 501 U.S. at 613.

Plaintiff-Appellants cite emphatically to *General Surgical Assocs., P.A. v. Humana Health Plan of Tex., Inc.*, 5:14-cv-00031, 2015 U.S. Dist. LEXIS 53579 (W.D. Tex. Apr. 23, 2015). The case is unreported and adopts an unauthoritative report and recommendation ("R&R"). *General Surgical Assocs., P.A. v. Humana Health Plan of Tex., Inc.*, 2015 U.S. Dist. LEXIS 54091 (W.D. Tex., Mar. 17, 2015). The R&R foregoes any meaningful examination of the plain wording of § 1395w-26(b)(3), and relies instead on portions of legislative history and executive materials, settling ultimately on an agency's take of what Congress's preemptive intent was, to frame the question in the following manner:

> **As CMS has explained**, preemption operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted. Medicare Prescription Drug Benefit, 70 Fed. Reg. 4 194-01,4320 (Jan, 28, 2005). Accordingly, the issue before the Court is whether CMS has created standards regarding prompt payment of claims.

*Gen. Surgical Assocs., P.A.*, 2015 U.S. Dist. LEXIS 54091, at 15.

The Magistrate then reported:

> § 422.520 establishes a standard regarding prompt payments of claims. Subsection (a) requires contract provisions regarding prompt payment between CMS and MA organizations... subsection (b) requires that contracts between MA organizations and providers like

GSA also contain prompt-payment terms, and it obligates MA organizations to comply with those terms. [] Because, under § 422.520, CMS has created standards in the area of prompt payment, laws like the [Texas Prompt Pay Act] are preempted, whether or not the law is "inconsistent" with those standards.

*Gen. Surgical Assocs.,* 2015 U.S. Dist. LEXIS 54091, at 15-16.

Without analyzing -as a threshold matter as courts must do- the text of § 1395w-26(b)(3) and the other portions of the MMA that define terms that are key to the preemption provision, see *Brady*, 160 F.3d at 66, the R&R relies on regulations that carry no preemptive force and on its own reading of an agency's comments to determine the scope of preemption, which courts cannot do. *Wyeth*, 555 U.S. at 577. Furthermore, the R&R's conclusion that 42 C.F.R. § 422.520 (2005) "establishes a standard regarding prompt payment of claims" is also flawed in that the plain wording of these guidelines -far from true governance of payment terms– amount to a mere requirement that contracts include a prompt payment clause. *Id*. at 15. Accordingly, the R&R's conclusion that because an executive agency wrote up regulations "in the area of prompt payment, laws like the TPPA are preempted" finds no support in authoritative sources.

In sum, there are no Circuit Court cases on point, addressing section 1395w-26(b)(3)'s preemptive scope and state prompt pay statutes. Nevertheless, the First Circuit's opinion in *Vega-Ramos* provides guidance on the language in section 1395(b)(3) which limits preemption only to state laws that amount to "standards"

for MA plans. *Vega-Ramos*, 479 F 3d at 52. Recognizing that it is not a "standard" for a "MA Plan", this Court correctly refused to upend Puerto Rico's legitimately exercised police powers and upheld Law 72, which prohibits MA Organizations from engaging in self-dealing.

The PRD followed suit appropriately in *Convalecencia*, and found that "federal law controls to the extent that federal standards exist; state common law prevails where neither Congress nor CMS has established standards." *Convalecencia*, 587 F. Supp. at 387. The Court then found that "the regulations that Plaintiffs cite as standards, are intended to regulate the behavior of MA organizations, not of healthcare providers under contract with MA organizations." *Id*. at 388. There being no statutory or regulatory provision for "resolving disputes between MA organizations and health care providers", the PRD concluded that "Medicare Part C does not preempt contractual claims between MA organizations and health care providers". *Id*. at 388-389. Likewise, the MMA and the CFR are silent on prompt payment parameters. *Mortier*, 501 U.S. at 613.

### D. Equity favors the OIC and MMM has come to the Court with unclean hands.

Plaintiff-Appellants' final argument is one of equity and estoppel. They point to four letters from the OIC to MA program participants regarding requests for intervention in disputes between MA Organizations and providers. Appellant's Brief at p.42-43. These letters are from OIC to four health service providers or the

like – the Association being one – informing that the OIC was without jurisdiction to address their respective claims against MA Organizations under the Prompt-Payment Act. (Docket 71-2-5; App.217-25). Three of these letters (App.220-225) are essentially identical and do not explain the OIC's grounds for declining to exercise jurisdiction. Plaintiff-Appellants sum up the gist of these three letters' contents well in page 42 of their brief, wherein the OIC stated that its "jurisdiction is limited exclusively to those transactions regarding the authorization of those organizations, the issue of licenses and their solvency or financial situation.". Appellants Brief at 42.

Because of these letters, Plaintiff-Appellants posit that the OIC is now estopped from arguing that the Prompt-Payment Act is not preempted by section 1395w-26(b)(3).

In the remaining letter cited by Plaintiff-Appellants –captioned PP-1473 from October 30, 2014- the OIC also declines to entertain a claim on the same grounds; that it lacked jurisdiction to do so. (Docket 71-2; App. 217-219). This letter is more explanatory, and references Normative Letter 2010-110-PP -wherein the OIC provides its view on the interaction between the MMA and the Prompt-Pay Act- as the reason why the OIC declines to exercise jurisdiction:

> [O]ur office has and will exercise jurisdiction to enforce the provisions of the Prompt-Payment Act for two situations only:

1. When the parties in the contract have explicitly agreed to adopt the Prompt-Payment Act to govern the claims payment procedures;"

2. When the contract does not contain a clause about prompt payment of claims (prompt payment provision), or when despite its existence, the clause is not clear or does not specifically delimit the term of time in which the insurer or health services organization must pay the claims to the providers.

…[W]e have evaluated the contracts of the laboratories partnered with the Organization and they do not qualify under any of the situations mentioned in the referenced Normative Letter; and therefore, our Office lacks jurisdiction to intervene in the controversy that you present.

Docket 71-2 at 2; App. 218.

This letter of October 30, 2014 illustrates OIC's position on when it does not exercise jurisdiction over a matter, pursuant to OIC Normative Letter 2010-110-PP. The OIC declined the Association's request apparently because it regarded a contract that either did not incorporate the Prompt-Payment Act, or it contained a clear and unambiguous prompt pay clause. *Id*.

Contrary to the selective citations that Plaintiff-Appellants offer, the record shows that the OIC's position is not inconsistent. It will exercise enforcement actions in disputes between MA organizations and health service providers where – as in this case– their contract, incorporates the Prompt-Payment Act, or does not contain a clear prompt pay clause. *Id*.[10] This is consistent with section 1395w-26(b)(3), and also with 42 C.F.R. § 422.520. The OIC resorts to enforcing the

---

[10] Plaintiff-Appellants' submission at Docket 71-2 references and quotes portions of OIC Normative Letter 2010-110-PP. It is also quoted in the PRCA's opinion (Docket 50-1,15-16; App. 169).

Prompt-Payment Act in supplementary fashion, when either the parties have agreed to it, or when the contract is silent or unclear on the matter. *Mortier*, 501 U.S. at 613.

But assuming, arguendo, that there is merit to Plaintiff-Appellants' argument, estoppel rarely applies to government. *U.S. v. Fleet Bank*, 288 F.3d 22, 39 n.7 (1st Cir. 2002)("The Supreme Court has held that courts may rarely, if ever, apply the doctrine of equitable estoppel against the government"); see also *U.S. v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995)("Judicial estoppel will be invoked against the government when it conducts what 'appears to be a knowing assault upon the integrity of the judicial system'").

In any event, Plaintiff-Appellants have come to the Court with unclean hands, and equity can be of no aid to their cause. *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 234 (1st Cir. 1993)("One defense to the equitable claim of estoppel is the doctrine of unclean hands.").

In their fourth turn at the bat, Plaintiff-Appellants seek a federal court's blessing to thwart the Full Faith and Credit clause of the constitution, and evade their voluntarily assumed contractual duties to health service providers in Puerto Rico, all the while attempting to fabricate federal jurisdiction where there is none. Furthermore, the Prompt-Payment Act was enacted in 2002, while the MMA and section 1395w-26(b)(3) was enacted in 2003. It took Plaintiff-Appellants 10 years

to articulate their argument, coincidentally, at the same time it sought to force a new contract on its providers which will give their agent –MSO- the power to effectively alter the rates agreed to with the providers. Plaintiff-Appellants opportunely sat on their argument, waiting for a convenient time to unfairly exert leverage against its network of health service providers. Laches, and unclean hands must now bar any sort of equitable relief in their favor. *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 910 (1st Cir. 1989)("he who seeks equity must do equity").

## VI. CONCLUSION

Plaintiff-Appellants' complaint is a defense to an anticipated breach of contract suit. Plaintiff-Appellants have not marshalled their burden to establish the Court's jurisdiction in their complaint, this case does not pose a federal question, and it should thus be dismissed.

In the alternative, this matter has been decided by a final state court judgment, and the Full Faith and Credit Clause bars further review. This Court must take heed to the PRCA's judgment, and dismiss this appeal.

Finally, on the merits, the PRD dismissed Plaintiffs-Appellants' complaint and correctly found that the Prompt-Payment Act is not preempted by the MMA. The plain language of section 1395w-26(b)(3) evinces Congress' intent to limit preemption only to "standards" for "MA plans" offered by "MA organizations" as

these terms are in defined in the MMA. The statute nowhere addresses the relationship between MA organizations and providers. The MMA's language on this front is clear, and it is thus unnecessary and inappropriate to resort to other legislative or executive materials, which have no preemptive force, particularly on the question of preemption.

In any event, the Prompt-Payment Act is consistent with federal regulations, and, as evinced by the OIC's position on the matter, may apply in supplementary fashion where federal law is silent or otherwise leaves room for state regulation, and also, as here, where the parties have agreed to apply Puerto Rico law.

**WHEREFORE,** the appearing Appellees request that this Honorable Court dismiss this case for lack of jurisdiction or otherwise affirm and leave in place the PRD's Judgment, granting Defendant-Appellee's motion for summary judgment.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 21st day of April, 2017.

s/Luis R. Román-Negrón
**LUIS R. ROMÁN-NEGRÓN**
Solicitor General

s/Luis J. López Valdés
**LUIS J. LÓPEZ VALDÉS**
Assistant Solicitor General

**Certificate of Compliance with Rule 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a) (7) (B) because:

   X       This brief contains <u>12,855</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a) (7) (B) (iii), or

_____      This brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a) (7) (B) (iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   X       This brief has been prepared in a proportionally spaced typeface using Times New Roman, Size 14, or

_____This brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

(s) ___s/*Luis J. López Valdés*_____
           Attorney for Appellees

Dated:  April 21st, 2017

## CERTIFICATE OF FILING AND SERVICE

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. I also certify that on this same date I served a copy of this brief via email to counsel of record for Plaintiff-Appellants, MMM and PMC. If counsel so request, once this Court accepts the brief, two (2) copies will be sent by certified mail with return receipt requested to:

In San Juan, Puerto Rico this 21th day of April, 2017.

*s/Luis J. López Valdés*
**LUIS J. LÓPEZ VALDÉS**
Acting Assistant Solicitor General
Department of Justice
P.O. Box 9020192
San Juan, P.R. 00902-0192
Tel. (787) 721-2900, Ext. 2034
Fax (787) 724-3380
llopez@justicia.pr.gov